# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * *    *
EDWARD ANTHONY,                          *
                                         *
                Petitioner,              *
                                         *
v.                                       *
                                         *
SECRETARY OF HEALTH                      *
AND HUMAN SERVICES,                      *
                                         *
                Respondent.              *
* * * * * * * * * * * * * * * * * * *    *
```

No. 14-680
Special Master Christian J. Moran

Filed: December 15, 2016

Attorneys' fees and costs;
shoulder injury related to
vaccination administration
("SIRVA").

<u>Richard Gage</u>, Richard Gage, P.C., Cheyenne, WY, for Petitioner;
<u>Gordon Shemin</u>, U.S. Dep't of Justice, Washington, DC, for Respondent.

## PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

Petitioner Edward Anthony filed his application for attorneys' fees and costs, requesting $50,905.46 in attorneys' fees and costs. The Secretary objected to the amount Mr. Anthony requested, proposing a range between $35,000 and $45,000. Mr. Anthony is awarded **$35,767.35**.

## Procedural History

Mr. Anthony alleged that on October 3, 2012, he received the influenza vaccination in his left shoulder that caused him to develop a chronic left shoulder injury, requiring surgery. After the Secretary's Rule 4 report, the undersigned

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

issued a ruling granting entitlement to Mr. Anthony on October 28, 2014, and both Mr. Anthony and the Secretary stated they would retain a life care planner.

In April 2015, the Secretary filed a joint life care plan regarding Mr. Anthony, but pain and suffering remained unresolved.  After initial and supplemental briefs on pain and suffering, the issue remained unresolved.  A hearing on pain and suffering was held on February 5, 2016, in Washington, DC. Petitioner and petitioner's counsel appeared remotely.  Subsequent to the pain and suffering hearing, the parties submitted a status report regarding damages, which was followed on March 2, 2016, by a decision on compensation.  Decision, issued Mar. 2, 2016, at 2 (decision implementing the compensation to which the parties had agreed in a February 22, 2016 status report).

Thereafter, Mr. Anthony requested $50,905.46 in attorneys' fees and costs, and has filed a memorandum in support.  The Secretary responded; Mr. Anthony did not reply.  There is no dispute that Mr. Anthony meets the statutory requirements for an award of attorneys' fees and costs.  42 U.S.C. § 300aa-15(e)(1) (a special master or a judge of the United States Court of Federal Claims shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013); Resp't's Resp., filed June 6, 2016, at 2.

Rather, the parties dispute the amount of attorneys' fees and costs.  The primary issue is whether Mr. Anthony's legal team – Richard Gage, Mr. Gage's associate (Dustin Lujan), and affiliated paralegals – should be compensated at rates prevailing where they work (Cheyenne, Wyoming) or where the Court of Federal Claims is located (Washington, DC).  Resp't's Resp., at 2.  At this point, the motion is ready for adjudication.

## Analysis

To determine a reasonable amount of attorneys' fees and costs under the Vaccine Act, special masters follow the lodestar approach, which involves a two-step process.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347-48 (Fed. Cir. 2008).  The first step involves two elements.  The judicial officer determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Therefore, a special master must determine both reasonable hourly rates for attorneys, and reasonable hours for tasks.  Second, the judicial officer may make an upward or downward departure

from the initial calculation of the fee award based on specific findings.  Id. at 1348. Here, because a special adjustment is not needed, the analysis focuses on the lodestar factors:  a reasonable hourly rate and a reasonable number of hours.

## 1. Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation.  Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower.  Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).  In this case, all the attorneys' work was done outside of the District of Columbia.

Thus, under Avera, determination of an attorney's hourly rate is a three-step process.  "First, the hourly rate in the attorneys' local area must be established. Second, the hourly rate for attorneys in Washington, DC must be established. Third, these two rates must be compared to determine whether there is a very significant difference in compensation."  Masias v. Sec'y of Health & Human Servs., No. 99-697V, 2009 WL 1838979, at *4 (Fed. Cl. Spec. Mstr. June 12, 2009) (citing Avera, 515.3d at 1353 (Radar, J. concurring)), aff'd, 634 F.3d 1283 (Fed. Cir. 2011), corrected, 2013 WL 680760 (Fed. Cl. Spec. Mstr. Jan. 30, 2013).

The petitioner is responsible for producing satisfactory evidence "that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 896.  The local area and forum hourly rates are usually determined by finding a reasonable rate for one year, and then increasing it or decreasing it by an inflation factor.  See Auch v. Sec'y of Health & Human Serv., No. 12-673V, 2016 WL 3944701, at *12 (Fed. Cl. Spec. Mstr. May 20, 2016) (discounting a 2015 hourly rate using the CPI inflation calculator);[2] McErlean v. Sec'y of Health & Human Serv., No. 13-534V, 2016 WL 4575583, at *4-5 (Fed. Cl. Spec. Mstr. July 28, 2016) (applying a 3.7 percent growth rate, discussed in detail below, to Mr. Gage's 2013 local rate).  An adjustment can also

---

[2] The CPI inflation calculator uses the average Consumer Price Index for a given calendar year, derived from changes in prices of all goods and services purchased for consumption by urban households.  CPI Inflation Calculator, Bureau of Labor Statistics (Dec. 9, 2016), http://data.bls.gov/cgi-bin/cpicalc.pl.

be made for an increase in the attorney's or paralegal's experience during the pendency of the case.  See McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (outlining forum rate ranges based on experience), reconsideration denied, No. 09-293V, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015).

The analysis below determines a reasonable hourly rate for 2013 for Mr. Gage, his paralegals, and his associate, and then adjusts those rates for 2014, 2015, and 2016 for inflation and experience.

### A.  Mr. Gage

Mr. Gage first started working in the Vaccine Program as an attorney admitted to the bar in 1990.  However, having worked in the Vaccine Program as a legal intern as well, he is approaching 30 years of experience, and, by his own estimate, has represented over 500 petitioners.  Pet'r's Fee Mem., filed May 18, 2016, at 4.  Mr. Gage's legal experience, and specific experience in the Vaccine Program, is an important factor in determining Mr. Gage's hourly rates under Avera.

### (1) *Forum (Washington, DC) Hourly Rate*

First, the undersigned must determine Mr. Gage's forum, or Washington, DC, hourly rate.

In September 2015, Special Master Gowen decided McCulloch, which resolved a longstanding fee dispute between the firm Conway Homer & Chin-Caplan, PC and the Secretary of Health & Human Services.  See McCulloch, 2015 WL 5634323, at *3-4.  In the course of deciding McCulloch, Special Master Gowen determined a forum hourly rate range based on an attorney's level of experience.  See id. at *19.

Special Master Gowen determined the ranges by reviewing 2009 to 2015 fees decisions "in which the decision of the court set forth the rates to be paid in cases decided since 2009." Id. at *16.  Both litigated and stipulated decisions were sampled.  Id.  He then adjusted rates from the various decisions to 2014 dollars by using a 3.7 percent growth rate in attorneys' fees as stated in the Executive Summary of the Real Rate Report ("RRR"), a product of the private sector (Datacert/Tymetrix), and referenced throughout McCulloch.  Id. at 8, 9 and 16. Special Master Gowen applied the 3.7% inflation rate based on his conclusion that

"it is apparent that lawyer rates increased, even in the post-recession years, at a rate well in excess of the CPI." Id. at 9.

Other special masters, including the undersigned, have found the rate ranges outlined in McCulloch sound, and the forum rate ranges have since been endorsed by all sitting special masters as of October 24, 2016.  See Dorego v. Sec'y of Health & Human Servs., No. 14-337V, 2016 WL 1635826, at *3 (Fed. Cl. Spec. Mstr. Apr. 4, 2016).  The rates outlined in McCulloch are:

20 – 30 years of experience in practice, $350 – $425;
11 – 19 years of experience in practice, $300 – $375;
8 – 10 years of experience in practice, $275 – $350;
4 – 7 years of experience in practice, $225 – $300;
and less than 4 years of experience in practice, $150 – $225.

McCulloch, 2015 WL 5634323, at *19.[3]

Mr. Anthony's proposal that Mr. Gage be compensated at the mid-point ($387.50) of the relevant McCulloch range ($350-$425) for 2013, 2014, and 2015, actually downplays his experience.  See Pet'r's Fee Mem. at 7; Pet'r's App. for Fees, tab C, filed May 18, 2016.  As an attorney with 23 years' experience (as of 2013), and much of that experience focused on the Vaccine Program, Mr. Gage could probably command an hourly rate near the top of the range assuming he worked in the forum.  However, it is to Mr. Gage's advantage to seek a relatively low forum rate, as it minimizes the difference between the forum rate and the local rate, thereby decreasing the likelihood his hourly rate will fall under the Davis County exception.

Considering all of Mr. Gage's experience, he should be at the high end of the forum range provided by McCulloch.  See McCulloch, 2015 WL 5634323, at

---

[3] Subsequently, the Attorneys' Forum Hourly Rate Fee Schedule, which was posted on the Court of Federal Claims website, amended this McCulloch range slightly.  OSM Attorneys' Forum Hourly Rate Fee Schedule: 2015 – 2016, United States Court of Federal Claims (Dec. 9, 2016), http://uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2015-2016.pdf (adding a 31+ years of experience in practice, a $385 – $430 range, and thus adjusting the 20 – 30 years of experience in practice range to $350 – $415, and further adding a paralegal range, $125 – $145).

*19.  A reasonable hourly rate for Mr. Gage, if he worked in Washington, DC, is $400 per hour.

Next, Mr. Gage's 2013 hourly forum rate must be adjusted for inflation.  As discussed above, McCulloch used a 3.7% inflation rate derived from the RRR report, and some other special masters have followed suit.  See McErlean, 2016 WL 4575583, at *4-5 (applying McCulloch's 3.7 percent growth rate); McCulloch, 2015 WL 5634323, at *9.  However, unlike the forum rate ranges, there is not consensus among special masters that 3.7% is the appropriate rate of inflation in all situations.  See Auch, 2016 WL 3944701, at *12 (discounting a 2015 hourly rate using the CPI inflating calculator instead of McCulloch's 3.7%).

While persuasive on some points, like the rate ranges discussed above, McCulloch is not binding, and not by itself an adequate justification for the inflation rate.  See Blum, 465 U.S. at 896 ("the burden is on the fee applicant to produce satisfactory evidence"); Auch, 2016 WL 3944701, at *12 (calculating Mr. Gage's local hourly rates by establishing a $300 per hour rate for 2015, and discounting by the CPI inflation calculator, not 3.7%); McCulloch, 2015 WL 5634323, at *19.

An inflation rate of 3.7% is not appropriate here.  It was derived from the billing rates paid by entities (corporate clients) to firms (large, medium, and small), both which are very different than those in the Vaccine Program.  McCulloch, 2015 WL 5634323, at *19 ("The RRR reports on corporate billing rates paid to small, medium and large law firms in different practice areas serving corporate clients.") (emphasis added).  The clients in the Vaccine Program are not corporations.  The attorneys who represent petitioners are almost always from small firms or are sole practitioners.  The undersigned is not aware of a single large firm that consistently practices in the Vaccine Program.  Thus, the RRR is not the best source of information about rate of inflation.  Rather than use a report about "corporate billing rates," the undersigned selects a more generic inflation rate from the Department of Labor, Bureau of Labor Statistics.  This rate has been used to escalate hourly rates for attorneys in other case.  Cal. Marine Cleaning, Inc. v. United States, 43 Fed. Cl. 724, 734 (1999) ("Although plaintiff has not provided

CPI figures for these months, we take judicial notice of the relevant data because the index is widely accepted as a means of calculating cost of living increases.")

Therefore, the 2013 hourly forum rate, $400, is adjusted for inflation as follows:

1.2% for 2014, ((100% + 1.2%) x $400 ) or $404.80;
an additional .6% for 2015 ((100% + .6%) x $404.80) or $407.23;
and an additional 1.0% for 2016 ((100% + 1.0%) x $407.23) or $411.30.[4]

In conclusion, Mr. Gage's forum hourly rates would be: $400 in 2013; $404.80 in 2014; $407.23 in 2015; and $411.30 in 2016.

### (2) *Local (Cheyenne, WY) Hourly Rate*

Next, the undersigned must determine Mr. Gage's local, or Cheyenne, Wyoming, hourly rate.

Mr. Anthony's motion for attorneys' fees and costs focuses on acquiring the forum rate for Mr. Gage, and, therefore, does not provide significant support for Mr. Gage's local rate. See Pet'r's Fee Mem. at 5. Mr. Anthony cites $285 per hour for 2014 and 2015 (and then applies the McCulloch 3.7% annual increase to determine a rate of $295.55 for 2016). Id. In support of a $285 per hour local rate, Mr. Anthony cites the recent decision in Carpenter v. Sec'y of Health & Human Servs., No. 13-628V, 2016 WL 1878438 (Fed. Cl. Spec. Mstr. Apr. 11, 2016). However, Mr. Anthony goes on to state that his proposed local rates are actually low, citing a single Fair Labor Standards Act case from 2009 and 2010 in which Mr. Gage was paid $300 per hour. Pet'r's Fee Mem. at 5.

---

[4] The 2014 and 2015 inflation numbers are derived from the 2-month and 12-month percent changes in the consumer price index for all urban consumers (CPI-U) for the Washington-Baltimore area. See Consumer Price Index, Washington-Baltimore – September 2016, Bureau of Labor Statistics (Dec. 9, 2016), http://www.bls.gov/regions/mid-atlantic/news-release/consumerpriceindex_washingtondc.htm. The 2016 rate was estimated by using the 12-month percent change through September 2016, which is 1.0% (-0.2 + 0.6 + 0.8 + -0.1 + -0.1). See id. These calculations are based on Bureau of Labor Statistics guidance. See Gerald Perrins & Diane Nilsen, Math calculations to better utilize CPI data, Bureau of Labor Statistics (Dec. 9, 2016), www.bls.gov/cpi/cpimathfs.pdf.

The Secretary states that Mr. Gage should be paid at Cheyenne, Wyoming, local hourly rates, and disputes the total attorneys' fees and costs compensation requested by citing comparable cases.[5]  Resp't's Resp. at 3, 5-6.  It is unclear, however, if respondent disagrees with rates, hours, or both.  Id. at 3.  The Secretary did not propose a specific hourly rate for Mr. Gage.

Given the sparse evidence provided by petitioner and respondent to support local hourly rates, the undersigned must look elsewhere for evidence.  See Dougherty v. Sec'y of Health & Human Serv., No. 05-700V, 2011 WL 5357816 at *6 (Fed. Cl. Spec. Mstr. Oct. 14, 2011) ("When the parties do not provide reliable evidence, the court can look to other evidence to establish a reasonable hourly rate.") (citing Rupert ex rel. Rupert v. Sec'y of Health & Human Servs., 52 Fed. Cl. 684, 688-89 (Fed. Cl. 2002)).  Factors to consider include Mr. Gage's billing in other vaccine cases, special masters' attorneys' fees awards to Mr. Gage in other vaccine cases, awards to representative attorneys in the geographic area in which Mr. Gage practices, and survey data from organizations such as the Wyoming State Bar and the Bureau of Labor Statistics.  These factors are analyzed before there is a conclusion regarding Mr. Gage's local hourly rate.

*(a) Mr. Gage's Billing Rates in Other Vaccine Program Cases*

Surveying Mr. Gage's billing in other cases highlights the challenges in evaluating the accuracy of Mr. Anthony's proposed local rates for Mr. Gage.  For instance, in the Carpenter fee petition, filed on Mar. 25, 2016, Mr. Gage billed $285 per hour for services performed from January to December of 2015. Carpenter, No. 13-628V, Mot. for Attorneys' Fees, filed Mar. 25, 2016, at tab C. However, in the Chang fee petition, filed Nov. 25, 2016, Mr. Gage billed $274 per hour for services performed during the exact same time period (from January to November 2015).  Chang v. Sec'y of Health & Human Servs., No. 14-717V, Mot. for Attorneys' Fees, filed Nov. 25, 2015, at tab C.  While the fact that Mr. Gage has been awarded a rate previously is certainly evidence that can be considered, it is not dispositive of the rates prevailing for similar services in the community.[6] See Blum, 465 U.S. at 896.

---

[5] See infra Section 6, Comparable Cases.

[6] Similarly, Special Master Hamilton-Fieldman has stated that what are purported to be "local" rates "appear to be a hybrid of sorts, reached after some litigation and much negotiation, and to have been applied exclusively in vaccine cases prosecuted by these attorneys, quite isolated from other fees awarded in the [] locality they purportedly represent.  As such, they should be considered in the mix of rates to reach a 'local' rate, but they should not in themselves

Mr. Gage's 2014 and 2015 invoices for the Vaccine Program billing applications are collected in Appendix A. These billings suggest an appropriate local range is $260 to $280 per hour, for 2013 to 2016. Id.

*(b) Special Masters' Attorneys' Fees Awards to Mr. Gage*

Special Masters, however, have deviated from Mr. Gage's contemporaneous local hourly billing rates with different approaches. For example, in Auch, Special Master Corcoran calculated Mr. Gage's local hourly rate by establishing a $300 per hour rate for 2015, then discounting that rate by the CPI inflation calculator to find the hourly rate in previous years. See 2016 WL 3944701, at *12. Similarly, in McErlean, Special Master Millman established $260 per hour for Mr. Gage's 2013 local rate, and then applied the 3.7 percent growth rate used in McCulloch to determine future rates. 2016 WL 4575583, at *4-5.

The Auch and McErlean approaches to determining Mr. Gage's local rates result in Mr. Gage sometimes receiving a higher rate per hour than what he contemporaneously requested. See Auch, 2016 WL 3944701, at *12 (acknowledging Mr. Gage's higher-than-requested hourly rates); McErlean, 2016 WL 4575583, at *4-5 (Mr. Gage awarded $280 per hour in 2015, and $290 per hour in 2016, despite other fees requests for those years suggesting rates of $274 per hour and $285 per hour, respectively).[7] There is no readily apparent justification for awarding rates higher than requested, as fee-shifting statues do not exist "as a form of economic relief to improve the financial lot of attorneys . . . ." See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565-66 (1986), supplemented, 483 U.S. 711 (1987). But see Garrison v. Sec'y of Health & Human Servs., 128 Fed. Cl. 99, 107 (2016) (finding a special master has discretion to increase an attorney's requested local rate from $285 to $327 per hour based on a multi-factor analysis).[8]

---

be determinative of that rate." Hoehner v. Sec'y of Health & Human Serv., No. 14-637V, 2016 WL 7048793, at *6 (Fed. Cl. Spec. Mstr. Nov. 7, 2016).

[7] The rates requested for Mr. Gage in this case are also higher than those he consistently requested for work performed in 2013, 2014, 2015, and 2016. See Appendix A.

[8] The Vaccine Program fee shifting statute exists "to ensure that vaccine-injury claimants will have readily available a competent bar to prosecute their claims under the Act[,]" and the data suggests legal help in the Vaccine Program is widely available even without awarding rates higher than requested. See Saunders v. Sec'y of Health & Human Servs., 25 F.3d 1031, 1035 (Fed. Cir. 1994) (interpreting the attorneys' fees and costs portion of the Vaccine Act); Bourche

*(c) Awards to Comparable Attorneys in Wyoming*

Another source of useful information is evidence of fees paid to representative attorneys practicing in Wyoming.  See Blum, 465 U.S. at 896 (rates should be in line with those in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation).

Mr. Anthony provided only two representative cases, one from the Vaccine Program, and one outside the Vaccine Program.  The Vaccine Program case provided, Carpenter, does not mention or analyze Mr. Gage's hourly rate, and therefore is of little value.  See Carpenter, 2016 WL 1878438.  The second case, a Fair Labor Standards Act (FLSA) case litigated by Mr. Gage from 2009 and 2010, awarded Mr. Gage $300 per hour under the fee shifting provisions of the FLSA.[9] Pet'r's Fee Mem. at 5 (citing ex. 1, an affidavit).

The undersigned searched for comparable Wyoming cases involving fee shifting, and found the following comparable examples:

(1) an attorney with over 25 years of experience billed $200 per hour for time out of court, and $250 per hour for time in court, for work on a bankruptcy matter between 2005 and 2010 in Natrona County, Wyoming.[10]  Broderick v. Wyoming Cent. Fed. Credit Union, 2012 WY 116, ¶ 6, 285 P.3d 941, 943, 947 (Wyo. 2012).  The Supreme Court of Wyoming found no abuse of discretion in the district court's award of fees and costs.  Id.

(2) another attorney with over 25 years of experience billed $250 per hour in a Fair Debt Collection Practices Act case in Cheyenne, Wyoming.  See Versteeg v.

---

v. Sec'y of Health & Human Servs., No. 15-232V, 2016 WL 3545769, at *4 (Fed. Cl. Spec. Mstr. June 3, 2016) ("Data suggests that the Vaccine Program's compensation system . . . is attracting significant quantities of quality attorneys to participate, not chilling their participation.").

[9] Mr. Gage's practice is primarily in the Vaccine Program, and thus, understandably, it is difficult for Mr. Anthony to produce representative cases for Mr. Gage other than his Vaccine Program cases.  See Pet'r's Fee Mem. at 5 (stating Mr. Gage's practice has been focused on the Vaccine Program since his admission to the bar).

[10] Cheyenne is not in Natrona County, Wyoming.

Bennett, DeLoney & Noyes, P.C., 839 F. Supp. 2d 1238, 1242 (D. Wyo. 2011). The district court, however, reduced the attorney's rate to $200 per hour.  Id.

The Broderick and Versteeg rates require some adjustment to account for (a) the passage of time / inflation, and/or (b) geographic differences, and/or (c) variation in the degree of legal complexity.  Even increasing the $200 per hour rates for inflation,[11] and in the case of Broderick for a perhaps more expensive legal market in Cheyenne, Wyoming, would not, however, result in rates greater than $250.

*(d) Survey Data*

A fourth source of useful information is survey data regarding attorneys' earnings in Wyoming, such as the Wyoming State Bar's 2015 Bar Member Survey, and the Bureau of Labor Statistics data regarding attorneys in Cheyenne, Wyoming.

The Wyoming State Bar's Bar Member Survey was used by a district court in Wyoming to research reasonable fees for attorneys of similar experience in Wyoming.  See Versteeg, 839 F. Supp. 2d at 1242; 2015 Wyoming State Bar Member Survey Results, Wyoming State Bar (Dec. 9, 2016), https://www.wyomingbar.org/wp-content/uploads/2015-Bar-Member-Survey-Results.pdf.  Based largely on the 2009 Wyoming Bar Member Survey, the district court reduced the attorney's $250 per hour request to an award of $200 per hour. See Versteeg, 239 F. Supp. 2d at 1242-43 ("The 2009 Bar Member Survey on fees shows that only 14.4% of attorneys in Wyoming charge $200.00-$300.00/hour. The largest portion of attorneys in Wyoming (25.6%) charge between $151.00-200.00/hour.")

Applying a similar analysis to Mr. Gage's hourly rates (based on 2015 Bar Member Survey Results) shows that Mr. Gage's local hourly rate is in the top 25% of attorneys in Wyoming who bill by the hour.  See 2015 Wyoming State Bar Member Survey Results, Wyoming State Bar (Dec. 9, 2016), https://www.wyomingbar.org/wp-content/uploads/2015-Bar-Member-Survey-Results.pdf , 19.

---

[11] The majority of work done in this case, and indeed in all Vaccine Program cases, is out of court.

Another useful source of survey data, although not dispositive, is the Bureau of Labor Statistics. The Bureau of Labor Statistics "is the principal Federal agency responsible for measuring labor market activity, working conditions, and price changes in the economy." See BLS Information, Bureau of Labor Statistics (Dec. 9, 2016), http://www.bls.gov/bls/infohome.htm. Within this responsibility, the Bureau conducts metropolitan area wage estimates for various professions, including attorneys. According to the May 2016 Metropolitan Area Occupational Employment and Wage Estimates, a 90th percentile attorney in Cheyenne, Wyoming (that is, one earning more than 89 percent of attorneys in Cheyenne, Wyoming) has an estimated wage of $82.43 per hour. Occupational Employment Statistics, Bureau of Labor Statistics (Dec. 9, 2016), www.bls.gov/oes/. This estimated wage cannot be directly compared to attorney billing rates for multiple reasons.[12] However, the fact that Mr. Gage's proposed 2015 hourly rate ($285) is 3.46 times larger than the hourly rate of a 90th percentile Cheyenne, Wyoming attorney suggests that Mr. Gage's proposed rate is perhaps overly generous.

*(e) Conclusion – Mr. Gage's Local Hourly Rate*

Considering all the above, a reasonable hourly rate for Mr. Gage's work performed in Cheyenne is $260 per hour for 2013.

The next question is how to adjust this rate for more recent years. Mr. Anthony proposes using McCulloch's 3.7% annual increase. See Pet'r's Fee Mem. at 5. The undersigned declines to use McCulloch's 3.7% rate for the reasons discussed in section 1.A(1) above (foremost because of significant differences between the clients and practitioners cited in the report and those in the Vaccine Program). Instead, the undersigned will apply the Bureau of Labor Statistics inflation numbers for the Western Region for 2014 and 2015, and an estimated 2016 rate by using the 12-month percent change through October 2016, which is 2.6% (0.5% + 0.1% + 0.2% + 0.5% + 0.5% + 0.2% + 0.1% + 0.0% + 0.3% + 0.3%).[13] See Consumer Price Index, West Region, Bureau of Labor Statistics

---

[12] Billing rates must absorb costs such as overhead, benefits, profit, realization (to include no pay and slow pay, discounting and charge-offs, and client satisfaction adjustments), and expected utilization. See Ward Bower, Pricing Legal Services, Law Practice Today (Jul. 26, 2016), http://apps.americanbar.org/lpm/lpt/articles/fin01061.html.

[13] Historically, the West Region CPI-U monthly percent changes are negative in November and December. See Consumer Price Index, West Region, Bureau of Labor Statistics (Dec. 9, 2016), http://www.bls.gov/regions/west/news-release/consumerpriceindex_west.htm.

(Dec. 9, 2016), http://www.bls.gov/regions/west/news-release/consumerpriceindex_west.htm.

Therefore, the 2013 hourly forum rate is adjusted for inflation as follows:

1.3% for 2014, ((100% + 1.3%) x $260 ) or $263.38;
an additional 1.8% for 2015 ((100% + 1.8%) x $263.38) or $268.12;
and an additional 2.6% for 2016 ((100% + 2.6%) x $268.12) or $275.09.

In conclusion, Mr. Gage's forum hourly rates are: $260 in 2013; $263.38 in 2014; $268.12 in 2015; and $275.09 in 2016.

**(3)** *Comparison*

The third step in this analysis is to compare Mr. Gage's forum rates to his local rates to determine whether there are very significant differences in compensation.  Masias, 2009 WL 1838979, at *4 (citing Avera, 515.3d at 1353 (Radar, J. concurring)).

Mr. Anthony argues that his attorneys, despite working primarily in Cheyenne, Wyoming, should receive forum rather than local rates because the difference between them is not "very significant."  Pet'r's Fee Mem., filed May 18, 2016, at 2-3.  The Secretary disagrees.  Resp't's Resp. at 3-4 ("Moreover, even accepting petitioner's proposed local and forum rates, the resulting hourly rate difference is very significant.").

Some special masters have used a formula to determine the difference between the two rates.  In those cases, "difference" is calculated based on the percentage by which the forum rate is an increase over the local rate, which is represented by the following formula:

% increase, or "difference" = [(forum rate – local rate) / local rate] x 100

Garrison, 2016 WL 3022076, at n.12, mot. for rev. denied, 128 Fed. Cl. 99 (2016).
The resulting number does not translate automatically into a finding that there is (or is not) a significant difference between a reasonable forum rate and a

---

Thus, the unavailability of the percent changes for November and December, 2016, most likely overstates the annual inflation rate.

reasonable local rate because no appellate authority has set a bright line test.  <u>See</u> <u>Auch</u>, 2016 WL 3944701, at *11.  One special master has commented that the resulting evaluation should be viewed from the perspective of paying client. <u>Hoehner</u>, 2016 WL 7048793, at *9.

Using the above formula, the differences between Mr. Gage's forum and local rate are:

|  | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|
| Forum Rate | $ 400.00 | $ 404.80 | $ 407.23 | $ 411.30 |
| Local Rate | $ 260.00 | $ 263.38 | $ 268.12 | $ 275.09 |
| Difference | 53.8% | 53.7% | 51.9% | 49.5% |

All of these differences are significant in the sense recognized by previous decisions, and therefore, consistent with <u>Masias</u>, the <u>Davis County</u> exception should apply.  <u>Masias v. Sec'y of Health & Human Servs.</u>, 634 F.3d 1283 (Fed. Cir. 2011); <u>see also</u> <u>Hall v. Sec'y of Health & Human Servs.</u>, 640 F.3d 1351, 1354 (Fed. Cir. 2011).

Although Mr. Gage's request to be compensated at rates prevailing in Washington, DC must be denied, the request itself is both consistent with existing law (<u>Avera</u>) and understandable.  Everything else being equal, Mr. Gage prefers a higher rate of compensation to a lower rate of compensation.  Seeking compensation at Washington, DC rates, where the Office of Special Masters is located, is a way for Mr. Gage to increase his revenue because Washington, DC is an expensive legal market.[14]  The increase in revenue does not correspond to any increase in expenses, such as the cost (or rent) of real property.

Mr. Gage's case, therefore, raises questions about the usefulness of awarding forum rates to attorneys whose local rates are not substantially different from the forum rate.  Mr. Gage can be compared to two hypothetical attorneys.  For purposes of the comparison, it is assumed that the three attorneys are equal in all respects, except location of their offices.

---

[14] How popular would the forum rule be if OSM were located in a relatively inexpensive legal market?

| Chart 1: Comparing Three Attorneys at Forum Rate | | | |
|---|---|---|---|
| | Attorney #1 | Attorney #2 | Mr. Gage |
| Experience | 20+ years | 20+ years | 20+ years |
| Number of hours | 50 | 50 | 50 |
| Forum rate pursuant to *McCulloch* | $400 / hour | $400 / hour | $400 / hour |
| Lodestar value at forum rates | $20,000 | $20,000 | $20,000 |

At this point, the three attorneys have earned an equal amount of compensation for their equal work.

Now it is time to differentiate the attorneys. Attorney #1 works in Washington, DC. Attorney #2 works in a location that is relatively expensive, but not as expensive as Washington, DC. Mr. Gage works in Cheyenne, Wyoming.

The location of the practice influences the local rate. Attorney #1, who works in Washington, DC, has the same local rate ($400 per hour) because the attorney works in the forum. Attorney #2 is found to have a reasonable hourly rate of $385 per hour. Mr. Gage is found to have a reasonable hourly rate of $275 per hour.

| Chart 2: Comparing Three Attorneys at Local Rate | | | |
|---|---|---|---|
| | Attorney #1 | Attorney #2 | Mr. Gage |
| **Location of Office** | Washington, DC | Relatively expensive area | Cheyenne, WY |
| Experience | 20+ years | 20+ years | 20+ years |
| Number of hours | 50 | 50 | 50 |
| Forum rate pursuant to *McCulloch* | $400 / hour | $400 / hour | $400 / hour |
| Lodestar value at forum rates | $20,000 | $20,000 | $20,000 |
| **Local Rate** | $400 | $385 | $275 |
| **Lodestar value at local rates** | $20,000 | $19,250 | $13,750 |

| Difference between lodestar at forum rate and lodestar at local rate | $0 | $750 | $6,250 |
|---|---|---|---|

Under the <u>Avera</u> / <u>Davis County</u> structure, the fee difference between the hourly rate for the Washington, DC attorney (attorney #1) and attorney #2 is not very significant.  Therefore, attorney #2 would receive $20,000, the same amount as the Washington, DC attorney.  However, as found in this decision, the difference between the Washington, DC attorney (attorney #1) and Mr. Gage is very significant.  Therefore, Mr. Gage is awarded the local (Cheyenne, Wyoming) rates, which is less than the amount awarded to attorney #1 or attorney #2.  This hypothetical leads to the question:  should Mr. Gage and attorney #2 be compensated differently?

Some would say that Mr. Gage should be awarded the same amount of compensation as attorney #2 is awarded, that is, the same amount as attorney #1.  This response would advocate for eliminating the <u>Davis County</u> exception, which is designed to prevent "windfalls."  <u>Avera</u>, 515 F.3d at 1348-49.

But, why is the additional $750 to attorney #2 not a windfall as well?  The hypothetical scenario assumes that a reasonable rate for attorney #2 is $385 per hour.  It would seem that paying more than a reasonable rate is, by definition, unreasonable.  Under this analysis, the disparity between attorney #2 and Mr. Gage is not due to Mr. Gage receiving too little (after all, he is being compensated at a reasonable hourly rate multiplied by a reasonable number of hours), but because attorney #2 is receiving too much.

Of course, these concerns can affect how special masters award attorneys' fees and costs only after Federal Circuit intervention.  <u>Avera</u> remains good law.  <u>Hall</u>, 640 F.3d at 1355.  As long as the Federal Circuit permits attorneys from outside Washington, DC to be compensated as if they worked in Washington, DC (subject to the <u>Davis County</u> exception), then special masters must compensate at Washington, DC rates.  However, this system has contributed to an increase in litigation regarding fees.  <u>See</u>, <u>e.g.</u>, <u>Garrison</u>, 2016 WL 3022076; <u>see also</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 181, 184 (2d Cir. 2008) ("this dispute concerning the 'forum rule' is but a symptom of a more serious illness").  The process of resolving fees is consuming judicial

resources and slowing the adjudication of other cases in the Vaccine Program, including those regarding entitlement.

Ultimately, the issue here is whether Mr. Gage can receive forum rates. He cannot because forum rates and Cheyenne rates are very significantly different. See Hall, 640 F.3d at 1355; Auch, 2016 WL 3944701 (finding Mr. Gage entitled to local rates); McErlean, 2016 WL 4575583, at *3 ("Richard Gage . . . [is] not entitled to forum rates under Avera.").

Thus, Mr. Gage's rates are $260 per hour for 2013, $263.38 per hour for 2014, $268.12 per hour for 2015, and $275.09 per hour for 2016.

### B. Paralegals

Over a period of three years, six different paralegals of varying experience levels worked on Mr. Anthony's case. Mr. Anthony requests rates for them between $110 and $135 per hour. Pet'r's Mem. in Support of Mot. for Attorneys' Fees, filed May 19, 2016, at 8-9.

As with Mr. Gage, Mr. Anthony requests that the paralegal be compensated at rates prevailing in the forum. For the same reasons as outlined above, however, the paralegals are not entitled to forum rates. And again, because Mr. Gage's attorneys' fees application is not useful as guidance on the hourly rate for paralegals in Cheyenne, Wyoming, and the Secretary does not specifically address the issue in her response, the undersigned must look elsewhere. See Dougherty, 2011 WL 5357816, at *6.

The most recent motion for attorneys' fees in another case which bills for the paralegals in this case (prior to the shift to trying to compensate them at the forum rates) sets the paralegal rates in the $108 to $112 per hour range. Carpenter, No. 13-628V, Mot. for Attorneys' Fees, filed Mar. 25, 2016, at tab F. The rates in Carpenter are consistent across the paralegals despite differences in education and experience. See Pet'r's Mem. in Support of Mot. for Attorneys' Fees at 8-9. Similarly, in Auch, petitioner first filed a motion for fees using paralegal rates ranging from $108 to $112 per hour, but subsequently filed an updated motion for fees seeking $135 per hour, a forum rate. Auch, 2016 WL 3944701, at *19.

Outside of applications Mr. Gage has filed in other Vaccine Program cases, information about the reasonable hourly rates for paralegals in Wyoming is not easily found. In the March 2009 Masias interim attorneys' fees decision, the

undersigned awarded an inexperienced paralegal (less than two years of experience) in Cheyenne, Wyoming, $100 per hour for work done in 2007. Masias, 2009 WL 899703, at *4-5. Adjusting that $100 per hour for United States inflation would approximate the $108 to $112 per hour range previously suggested by petitioners. See CPI Inflation Calculator, Bureau of Labor Statistics (Dec. 9, 2016), http://data.bls.gov/cgi-bin/cpicalc.pl (adjusting $100 per hour in 2007 to approximately $116 per hour in 2016 based on the United States CPI). Despite this apparent consistency between Mr. Gage's previous invoices and Masias, more recent Wyoming cases suggest previous Vaccine Program paralegal rates have been overly generous.[15]

In 2011, a bankruptcy court in Cheyenne, Wyoming, awarded a Cheyenne, Wyoming firm $75 per hour for support staff (including paralegals) for work done in 2009 and 2010. In re Peterson, No. 09-20566, 2011 WL 1750732, at *1, 5 (Bankr. D. Wyo. May 3, 2011). In 2012, in Broderick, discussed above, the Supreme Court of Wyoming noted paralegal rates in Natrona County, as well as throughout Wyoming, for work performed in 2010. Although there is no discussion of experience, an affidavit stated that paralegal rates in the county varied from $35 to $105 per hour, and the Supreme Court found the district court did not abuse its discretion in awarding fees and costs consistent with that affidavit. Broderick, 2012 WY 116, ¶ 6, 285 P.3d 941, 943, 947. The $35 to $105 per hour range is necessarily broad as it encompasses all of Wyoming, as well as various levels of experience.

Despite its breadth, information from Broderick has some relevance in determining reasonable paralegal rates in this case. On one hand, the paralegals that worked on Mr. Anthony's case were relatively inexperienced. All had less than three total years of experience as a paralegal, and many worked on the case

---

[15] A more detailed look at the rate determined in Masias is consistent with this statement. The $100 per hour paralegal rate in Masias was derivative of the decision in Avera. Masias, 2009 WL 899703, at *4-5 (citing Avera v. Sec'y of Health & Human Serv., 75 Fed. Cl. 400, 401-02 (2007), aff'd, 515 F.3d 1343 (Fed. Cir. 2008)). However, the rate in Avera was based on Ms. Hernandez being a third year law student, as opposed to a paralegal, and a lack of opposition by respondent, as opposed to exploration of an appropriate Cheyenne, Wyoming, market rate, in accordance with Blum. See Blum, 465 U.S. at 896; Avera, 75 Fed. Cl. at 401. Ms. Hernandez's $100 per hour rate from Avera was then applied to paralegal support generally in Masias without further analysis. Masias, 2009 WL 899703, at *5.

very briefly.[16]  See Pet'r's Mem. in Support of Mot. for Attorneys' Fees at 8-9. This lack of experience would suggest they would be toward the bottom of the $35 to $105 range.

On the other hand, Mr. Anthony's paralegals all worked in Cheyenne, the largest city in Wyoming.  This would suggest that, discounting experience, they would be near the top of the range.  Balancing these two factors together, location and experience, suggests that Mr. Anthony's paralegals should be compensated approximately in the middle of the range approved by the Wyoming Supreme Court.

The middle of the 2010 per hour range is $70 (($35 + $105) / 2), which is slightly below the $75 estimated by the Cheyenne, Wyoming, Bankruptcy Court. Given the paralegals' in this case inexperience it would likely be appropriate to lean toward the lower portion of the 2010 range, or something below $75 per hour. However, in an abundance of caution, the undersigned will place the rate for all the paralegals at $75 per hour in 2010, and apply the western region's consumer price index to adjust that starting rate for inflation (using 2.6% for 2016, as discussed above).[17]  Thus, the rates for the paralegals in this case will be:

$75 per hour for 2010;
$77 per hour for 2011 (approximately $75 x 1.027);
$78 per hour for 2012 (approximately $77 x 1.017);
$80 per hour for 2013 (approximately $78 x 1.018);
$81 per hour for 2014 (approximately $80 x 1.013);
$82 per hour for 2015 (approximately $81 x 1.018); and
$84 for 2016 (approximately $82 x 1.026).

---

[16] Ms. Nelson had eight years of experience working for law firms, but did not have a paralegal degree.  See Pet'r's Mem. in Support of Mot. for Attorneys' Fees at 8-9.

[17] Similar to the discussion regarding Mr. Gage, a 90th percentile paralegal (that is, one earning more than 89 percent of paralegals in Cheyenne, Wyoming) has an estimated wage of $32.12 per hour according to the May 2016 Metropolitan Area Occupational Employment and Wage Estimates for paralegals in Cheyenne, Wyoming.  For the reasons discussed in footnote 12, this estimated wage cannot be directly compared to paralegal billing rates.  Nonetheless, the fact that the range of rates for paralegals in this case is over 2.5 times larger than the hourly rate of a 90th percentile Cheyenne, Wyoming paralegal, despite the paralegals in this case being inexperienced, suggests that the suggested rates are very reasonable at a minimum, and likely very generous.

See Consumer Price Index, West Region, Bureau of Labor Statistics (Dec. 9, 2016), http://www.bls.gov/regions/west/news-release/consumerpriceindex_west.htm.

### C.  Mr. Lujan

Mr. Lujan is a 2015 law school graduate, and associate for Mr. Gage.  Mr. Anthony states that Mr. Lujan received extensive training in the Vaccine Program while with Mr. Gage, and requests that Mr. Lujan receive a forum rate of $200 per hour for hours billed from May 29, 2015, to November 18, 2016.  Pet'r's Fee Mem. at 7-8, tab D.  This request is problematic for two reasons.

First, Mr. Lujan, a 2015 law school graduate, was not admitted to the Wyoming state bar until sometime after September 4, 2015, when Wyoming's bar exam results were released.  Thus, thirteen of Mr. Lujan's sixteen hours billed to the case occurred on or before September 4, 2015, or before he was a licensed attorney in Wyoming.  For those hours Mr. Lujan is entitled to bill at a law clerk rate.  Under McCulloch, the forum rate for a law clerk is $145 per hour. McCulloch, 2015 WL 5634323, at *21.

Second, under the same analysis applied to Mr. Gage, Mr. Lujan is not entitled to forum hourly rates.  Unfortunately, Mr. Anthony's attorneys' fees application only proposes a forum rate for Mr. Lujan, providing no guidance on an appropriate local rate for a law clerk or junior associate.  Pet'r's Fee Mem. at 7. Additionally, the Secretary does not specifically address the issue in her response. Therefore the undersigned, again, must look elsewhere for the proper hourly rate for Mr. Lujan.  See Dougherty, 2011 WL 5357816, at *6.

As with paralegal fees, guidance on law clerk fees in Wyoming is not abundant.  Nonetheless, the undersigned found a 2004 Wyoming District Court case awarding $40 per hour for a summer intern's work in 2002.  Skinner v. Uphoff, 324 F. Supp. 2d 1278, 1285 (D. Wyo. 2004).  Adjusting this for national inflation (admittedly, an approximate calculation, but easier for this purpose), $40 in 2002 was approximately $53 in 2015.  CPI Inflation Calculator, Bureau of Labor Statistics (Dec. 9, 2016), http://data.bls.gov/cgi-bin/cpicalc.pl.  Given Mr. Lujan's training, as well as the fact that during this time he was a law school graduate

preparing for the bar exam, or law school graduate post bar exam, he is entitled to a higher rate.

Therefore, I find Mr. Lujan's 2015 rate as a law clerk to be $90 per hour. Given the per hour rates of the paralegals determined above, and the resulting junior associate rate below, this rate for an experienced law clerk in Cheyenne, Wyoming, is reasonable.

Now the undersigned must determine Mr. Lujan's junior associate rate for 2016. The most recent motion for attorneys' fees to bill for Mr. Lujan (prior to the McCulloch inspired increase to $200 / hour) set his 2015 hourly rate at $140. Carpenter, No. 13-628V, Mot. for Attorneys' Fees, filed Mar. 25, 2016, at tab F. In the undersigned's experience this amount, relative to Mr. Gage, is not commensurate with the massive difference between Mr. Lujan's experience and Mr. Gage's 26 years of experience. Simply, it is not reasonable for someone with less than one-twentieth the experience of Mr. Gage to earn 49% ($140 / $285) of what he earns per hour.

There is other evidence supporting a ratio less than 49%. Estimated earnings ratios of inexperienced to experienced attorneys in the Vaccine Program are easily calculated from the McCulloch decision. For instance, the hourly rate range for attorneys with over 20 years of experience in the Vaccine Program is $350 to $425 per hour. McCulloch, 2015 WL 5634323, at *19. The hourly rate range for attorneys with under 4 years of experience in the Vaccine Program is between $150 and $225 per hour. Id. It is established that Mr. Gage's forum rate would be $400, and reasonable that Mr. Lujan's rate would be near the bottom of the under 4 year range, or approximately $160 per hour. The ratio between these two hourly rates is 40% ($160 / $400). If this 40% ratio were applied to Mr. Gage's 2015 rate ($268.12 per hour in 2015) to determine Mr. Lujan's rate, it would result in Mr. Lujan receiving $107.25 per hour for 2015. Applying a 2.6% inflation rate to $107.25 results in Mr. Lujan's rate being $110 per hour for 2016.

Most persuasive is that these rates are consistent with, and in fact generous compared to, the 2010 attorney rate in Broderick, discussed above. Broderick, 285 P.3d at 943, 947. In Broderick, an attorney with over 25 years of experience billed $200 per hour for time out of court, and $250 per hour for time in court, in a bankruptcy matter in Natrona County, Wyoming. Broderick, 285 P3d at 943. Even increasing the $200 per hour rate for inflation, and for a perhaps more expensive Cheyenne, Wyoming, legal market, would not result in an out of court rate in Broderick greater than $250. Therefore, Mr. Lujan's $107 to $110 per hour

rate, with almost no experience, compared to a Wyoming attorney's $250 per hour rate with 25 years of experience, is reasonable, and likely generous.  This rate is also consistent with the paralegal rates ($75 - $84 per hour) and law clerk rate ($90 per hour) determined above.

Therefore, I find Mr. Lujan's rates for this case are $107.25 per hour for 2015 and $110 per hour for 2016.[18]

## 2. Reasonable Hours for Tasks

The second element in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary.  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

When attorneys fail to provide sufficient information in their billing invoices, special masters may reduce the award.  See Barclay v. Sec'y of Health & Human Servs., No. 07-605V, 2014 WL 2925245, at *4 (Fed. Cl. Spec. Mstr. Feb. 7, 2014) (reducing an attorney's requested time due to vague entries which made it impossible to determine the reasonable amount of time, and reducing requested time due to the attorney's performing tasks reasonably delegated to a paralegal or secretary).

The undersigned conducted a line-by-line analysis of all the entries documented in the timesheets, despite the fact that when making reductions, a line-by-line evaluation of the fee application is not required.  McCulloch, 2015 WL 5634323, at *5 (quoting Wasson by Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482 (1991)).  The attorneys' timesheets are organized, and contain few

---

[18] Similar to the discussion regarding Mr. Gage, and footnote 17, in considering the propriety of petitioner's hourly rate request for Mr. Lujan, the undersigned examined attorney data from the Bureau of Labor Statistics.  Occupational Employment Statistics, Bureau of Labor Statistics (Dec. 9, 2016), www.bls.gov/oes/.  A 25th percentile attorney (that is, one earning more than 24 percent of attorneys in Cheyenne, Wyoming) has an estimated wage of $31.27 per hour.  Id.  Dividing Mr. Lujan's 2015 $107.25 per hour rate by $31.27 per hour means Mr. Lujan bills at a 3.43 multiple of the 25th percentile attorney's wage per hour ($107.25 / $31.27 = 3.43). For the reasons discussed in footnote 12, this estimated wage cannot be directly compared to junior associate billing rates.  Nonetheless, the fact that Mr. Lujan's billing rate is a 3.43 multiple of a 25th percentile Cheyenne, Wyoming attorney, suggests that the proposed rates are very reasonable at a minimum, and likely very generous.

block entries.[19]  However, the petitioner's timesheets regarding Mr. Gage are often vague, making it impossible to determine whether certain activities are reasonable.

In November 2004, the Office of Special Masters issued revised Guidelines. The Guidelines state "counsel are advised to maintain detailed contemporaneous records of time and funds expended under the Program."  Office of Special Masters, Guidelines for Practice under the National Vaccine Injury Compensation Program (Rev. Nov. 2004) at § XIV.  Detailed (or stated another way, non-vague) contemporaneous records are the petitioner's responsibility and allow special masters to determine the reasonableness of attorneys' fees requests.  See Avgoustis v. Shinseki, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011).  Avgoustis, a Veterans Administration appeal, provides numerous examples of inadequate invoice descriptions, such as "'writing to client,' 'reviewing Court's notice of docketing,' 'reviewing litigation file,' '[t]elephone conversations with VA counsel,' and 'faxing materials to VA counsel[.]'"  Avgoustis, 639 F.3d at 1344-45 (Fed. Cir. 2011) (quoting McDonald v. Nicholson, 21 Vet. App. 257, 265 (2007)).  In concluding that the Veterans Court's requirement for an itemized billing statement in accordance with the Equal Access to Justice Act (EAJA) did not abrogate attorney-client privilege,[20] the Federal Circuit stated that the "Veterans Court's specificity requirements as articulated in McDonald and this case are in accordance with these cases from the Supreme Court, our circuit, and other circuits." Id. at 1344.  The specificity referred to by the Federal Circuit requires adequately identifying the purpose of the activity sufficiently to determine if the charges were reasonable.  Id. at 1340.

Inconsistent with Avgoustis, Mr. Gage's billing records are consistently vague.  Well over half of Mr. Gage's billing entries do not provide enough detail for the undersigned to determine if the activity was necessary (and therefore reasonable), or if the work was in fact attorney work (as opposed to paralegal or secretarial work).  The majority of the vague entries are Mr. Gage "conferencing" with someone, without information about the subject.  For instance, "conference with paralegal," "[p]hone conference with life care planner," and "conference with

---

[19] There are a few, however.  Petitioners' attorneys should always avoid block entries, even for relatively small periods of time.  See Pet'r's App. for Fees, Tab C, entries 28-Oct-14, 29-Aug-15, and 18-Nov-15.

[20] Though the issue of the relationship between vague billing entries and concerns about attorney-client privilege and work-product doctrine was not raised in this case, a detailed discussion of these issues is available in Florence v. Sec'y of Health & Human Servs., No. 15-255V, 2016 WL 6459592 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

law clerk." <u>See</u> Pet'r's App. for Fees, tab C, entries 7-Mar-14, 11-Nov-14, and 25-Aug-15.  Without the "what" of these conferences, and if not plainly obvious the "why," these entries are vague.  In future fee applications, the petitioners' attorneys should provide billing entries that adequately support the necessity and appropriateness of their work.

In addition to the line-by-line evaluation, the undersigned has also considered the petitioner's counsel's fees in the context of the overall case, and experience with similar Vaccine Act litigation.  In short, all factors point to a finding that the petitioner's counsel, Mr. Gage, has billed approximately 10 percent too many hours.  Admittedly, this estimate is not precise.  It is important to recall, however, that "the essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." <u>Fox v. Vice</u>, 563 U.S. 826, 838 (2011).  While not precise, the evidence marshalled above is adequate to accomplish "rough justice."

## 4. Lodestar Summary

Mr. Gage billed 68.3 hours total.[21]  He billed 1.5 hours in 2013, 13.4 hours in 2014, 26.8 hours in 2015, and 26.6 hours in 2016.  Applying the rates established above ($260 in 2013, $263.38 in 2014, $268.12 in 2015, and $275.09 in 2016), Mr. Gage's initial fee calculation is $18,422.38.[22]  A ten percent reduction reduces it to $16,580.14.

The total fee calculation for Mr. Lujan and the paralegals is $6,829.00.[23]

There are no specific findings which require an upward or downward departure from these initial calculations.  <u>Avera</u>, 515 F.3d at 1348.

---

[21] In the future petitioner's attorney should include the total hours worked by each person who worked on the case, as opposed to just the total cost.

[22] ($260 x 1.5) + ($263.38 x 13.4) + ($268.12 x 26.8) + ($275.09 x 26.6) = $18,414.57

[23] Paralegal rates per hour:  $80 per hour for 2013; $81 per hour for 2014; $82 per hour for 2015; $83 per hour for 2016.  Mr. Lujan:  ($90 x 13) + ($107.25 x 2) + ($110 x 1) = $1494.50.  Ms. McNair:  ($80 x .3) + ($81 x 8.3) + ($82 x 3.2) + ($83 x 2.9) = $1,199.40.  Mr. Vance:  ($81 x .3) + ($82 x 20.3) + ($83 x 5.3) = $2,128.80.  Ms. Nelson:  ($80 x .3) + ($81 x 1.8) = $169.80.  Mr. Hurlburt: ($81 x 17.1) = $1385.10.  Kara Sutton:  ($80 x 3.9) = $312.00.  Anne Hess:  ($82 x 1.7) = $139.40.

Accordingly, the undersigned finds a reasonable amount of attorneys' fees to be $23,409.14.

## 5. Litigation and Expert Costs

In addition to the award of attorneys' fees, the petitioner also requests an award of costs, primarily for a life care planner.  The undersigned considered costs associated with this case, and found them to be reasonable.  Accordingly, the undersigned finds an appropriate amount of costs to be $12,358.21.

## 6. Comparable Cases

The above analysis is the basis for this decision.  The undersigned, however, has also considered the Secretary's response to the petitioner's motion for attorneys' fees, which cited three cases supporting a fees and costs range between $35,000 and $45,000.[24]  Given that the attorneys' fees and costs award, based on the analysis above, falls in the range cited by the Secretary, a detailed consideration of her comparable cases is unnecessary.

### Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e).  The undersigned finds $35,767.35 ($23,409.14 in fees and $12,358.21 in costs) to be a reasonable amount for all attorneys' fees and costs incurred.  The undersigned GRANTS the petitioner's motion and awards **$35,767.35** in attorneys' fees and costs.  This shall be paid as follows:

---

[24] The three cases cited by the Secretary are: Abdulla v. Sec'y of Health & Human Servs., No. 13-853V, 2015 WL 9920826 (Fed. Cl. Spec. Mstr. Dec. 23, 2015); Jenney v. Sec'y of Health & Human Servs., No. 14-338V, 2015 WL 7068205 (Fed. Cl. Spec. Mstr. Oct. 23, 2015); George v. Sec'y of Health & Human Servs., No. 13-621V, 2014 WL 3035514 (Fed. Cl. Spec. Mstr. June 13, 2014).

**A lump sum payment of $35,767.35, in the form of a check made payable jointly to the petitioner and the petitioner's attorney, Richard Gage, Richard Gage, P.C., for attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e).**

**IT IS SO ORDERED**.

<u>S/Christian J. Moran</u>
Christian J. Moran
Special Master

# Appendix A

| Name | Docket Number | Date of Fees Motion | Requested Hourly Rate | | | |
|---|---|---|---|---|---|---|
| | | | 2013 | 2014 | 2015 | 2016 |
| LAWRENCE v. SHHS | 09-435V | 3/15/2013 | $260.00 | | | |
| WALTERS v. SHHS | 06-379V | 5/10/2013 | $270.00 | | | |
| DINGLE v. SHHS | 08-579V | 10/28/2013 | $270.00 | | | |
| SCOTT v. SHHS | 08-756V | 11/14/2013 | $270.00 | | | |
| CAUDILLO v. SHHS | 08-334V | 1/23/2014 | $270.00 | | | |
| ENGELS v. SHHS | 07-804V | 1/29/2014 | $270.00 | $274.00 | | |
| FAIRCHILD v. SHHS | 13-487V | 1/8/2015 | $270.00 | $274.00 | | |
| AUCH v. SHHS | 12-673V | 7/31/2015 | $270.00 | $274.00 | $274.00 | |
| WILSON v. SHHS | 14-411V | 9/22/2015 | $270.00 | $274.00 | $274.00 | |
| CHANG v. SHHS | 14-717V | 11/25/2015 | $270.00 | $274.00 | $274.00 | |
| CARPENTER v. SHHS | 13-628V | 3/25/2016 | $270.00 | $285.00 | $285.00 | $285.00 |